IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-cv-00122-RJC

| | |
|---|---|
| DAMEON MACK-BEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FNU HICKS, Sergeant; )<br>KELLY PENNELL, Correctional )<br>Officer; FNU PRITCHARD, )<br>Correctional Officer, )<br>)<br>Defendants. )<br>) | **ORDER** |

**THIS MATTER** is before the Court on consideration of the Defendants' motion for summary judgment as to the claims raised by Plaintiff, who is proceeding *pro se* with a complaint he filed pursuant to 42 U.S.C. § 1983.[1]

I.  BACKGROUND

A.  Complaint

This case involves a claim that the three defendant officers employed excessive force against Plaintiff on January 1, 2011, while Plaintiff was an inmate housed in the Alexander Correctional Institution ("ACI").[2] According to the complaint, at around 1:30 p.m. on January 1st, Plaintiff was summoned by Sgt. Hicks to his office in the Blue Unit so that Hicks could serve him with paperwork related to a disciplinary matter. Plaintiff claims that Sgt. Hicks cursed at him and

---

[1] After the defendants filed their motion for summary judgment, the Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of his obligation in responding to the motion for summary judgment. Plaintiff has filed his response opposing summary judgment. (Id., Doc. Nos. 39; 40).

[2] It is undisputed that each of the defendants were employed by the North Carolina Department of Public Safety ("NC DPS") as officers and that each was working with the ACI at the time of the incident.

1

struck him in the face with a stack of papers and Plaintiff instinctively held out his arm to defend himself and Sgt. Hicks grabbed his arm and they fell to the floor. Defendant Pennell entered the office and rather than employ mace to subdue him, Pennell began beating Plaintiff with his baton on his back and his head. Defendant Pritchard responded to the scene and joined Pennell in striking Plaintiff, who at that time, was being restrained on the floor by Hicks who had one of Plaintiff's arms pinned behind him. Pritchard and Pennell continued to strike Plaintiff while he was subdued both with their fists and batons while Plaintiff yelled that he was not resisting their efforts to restrain him. Hicks was able to secure Plaintiff by handcuffing him with his hands behind his back, and Hicks then struck Plaintiff on the side of his head and his back with the baton. While Hicks was so engaged, Pennell forced Plaintiff's legs apart and grabbed his testicles which caused him to scream in pain. Pritchard then hit Plaintiff in the mouth with his baton and Hicks broke Plaintiff's nose with a punch to his face.

After the altercation ended, Plaintiff was taken by other officers to segregation and his injuries were assessed, first within the medical department at ACI by Nurses Church and Willow where he was treated and photographs were taken of his injuries, and later at the Catawba Valley Medical Center ("CVMC") where Plaintiff was treated, released and returned to ACI. Plaintiff contends that he suffered a broken nose (which later required surgery), a gash to his upper lip, head and back contusions, swollen upper and lower lips, injuries to the inside of his mouth, groin pains, and emotional distress. Plaintiff states that he continues to suffer nasal congestion and blood drainage, experiences frequent headaches and back pain, and pain in his groin. (5:11-cv-00122, Doc. No.1: Complaint at 4-6).

B.   Summary Judgment

Defendants filed a motion for summary judgment and attached several exhibits which

included an affidavit from Douglas Watkins who is employed by the NC DPS as a Correctional Captain and was assigned to conduct an investigation into the January 1st incident. Captain Watkins took numerous statements on the day of the incident from the officers involved and the medical personnel that treated both Plaintiff and the defendants.[3]

      1.     Statement of Sgt. Hicks

According to the statement provided by Sgt. Hicks, Plaintiff entered his office on January 1st in connection with a disciplinary investigation. Sgt. Hicks handed Plaintiff a copy of a form and Plaintiff then gave him an unsolicited punch to the left side of his head and Sgt. Hicks then grabbed Plaintiff around the waist in an attempt to take him to the ground until assistance could arrive. Plaintiff tried to place Sgt. Hicks in a headlock and gouged his right eye in the process which caused Hicks to lose his contact lens. Plaintiff next grabbed Hicks around the neck and proceeded to choke him and curse at him. Other officers arrived and Plaintiff was ordered to submit to handcuffs, but he refused and continued to struggle causing Hicks to strike Plaintiff with a baton on his right leg in order to gain control of him. Plaintiff was finally handcuffed and placed in leg restraints and escorted to segregation. (Id., Doc. No. 34-3 at 16).

After Plaintiff was escorted to segregation, Sgt. Hicks was examined in the medical department by Nurse Sonya Fleming who noted that his face was red and carried multiple scratches, some of which were bleeding. His right eye was blood shot and she opined that he may have suffered a corneal abrasion and he complained of impaired vision in both eyes. Fleming also noted that his neck was swollen, and that both of his arms had multiple scratches and his upper lip was swollen and bleeding. Hicks reported that he was experiencing a pain level that was 10 out of 10 and Fleming referred Hicks to the emergency room for further evaluation and treatment but he

---

[3] As part of the investigation, Watkins interviewed the defendants, Plaintiff, and other officers that were involved either as witnesses or in treating or transporting Plaintiff after the altercation.

declined further treatment explaining that he had received sufficient care. (Id. at 14, 42).

        2.      Statement of Officer Pennell

In Pennell's statement, he notes that he responded to Hicks' office immediately after hearing a disturbance and observed Plaintiff on top of Hicks on the floor and applying a chokehold. Pennell intervened and struck Plaintiff on the right leg with his baton and explains that he did not use pepper spray because he could not see Plaintiff's face and he felt the situation required an urgent response. Plaintiff responded by kicking Pennell which caused him to lose his balance as he was trying to restrain him. Pennell was able to sit on Plaintiff's legs and other officers responded and were able to secure Plaintiff's hands and legs. Pennell grabbed Plaintiff by the left shoulder and raised him into a standing position and he was taken to segregation. (Id. at 18). Pennell executed an addendum to his statement which explains that he did not hear Sgt. Hicks curse at Plaintiff, but that he did observe Hicks employ a single baton strike to Plaintiff's right leg. Pennell denies that he observed anyone strike Plaintiff in the face or hold him up so that he could be struck. (Id. at 19).

Pennell was examined by Nurse Fleming after the incident. Pennell reported that he felt that his left pinky finger was sprained, and Fleming noticed that it was significantly swollen and red, as were his arms. Pennell was referred to CVMC for further evaluation. (Id. at 43).

        3.      Statement of Officer Pritchard

Officer Pritchard observed Pennell enter Hicks' office with his baton in an effort to assist Hicks in subduing Plaintiff. Pritchard noted that Plaintiff was resisting Hicks and Pennell in their effort to restrain him and he observed Pennell strike Plaintiff once with his baton. After Plaintiff was placed on the floor, Pritchard assisted in placing him in restraints. During the struggle, Plaintiff head-butted Pritchard which caused cuts to his upper and lower lip. Pritchard did not

4

observe anyone attempt to strike Plaintiff in the face. (Id. at 19-21).

Pritchard was treated by Nurse Taylor after the incident. Taylor and another nurse observed that Pritchard had a laceration on his upper and lower lip which Pritchard explained was caused by a head butt administered by Plaintiff. Pritchard was referred to CVMC for further evaluation. (Id. at 40-41).

4. Statement of Officer Condon

In his statement, Officer Condon relates that he responded to Hicks' office after hearing a disturbance and he observed Hicks, Pennell and Pritchard struggling to subdue Plaintiff as they tried to place him on the ground in a prone position. Despite their efforts, Plaintiff continued to resist and tried to kick and head butt the officers. Condon applied a wristlock hold to Plaintiff and ordered him to the ground and to stop resisting, but Plaintiff refused to comply. Condon saw Hicks strike Plaintiff once with a baton on the leg which caused Plaintiff to go face down on the floor and the officers were then able to place him in handcuffs, but he still continued to struggle even though Plaintiff stated that he "was not resisting." Officers were finally able to subdue him and he was placed in leg irons and escorted to segregation. At no time, did Condon observe anyone strike Plaintiff in the face or attempt to grab his testicles. (Id. at 21-25).

5. Statement of Officer Nadeau

Officer Nadeau heard commotion in Sgt. Hicks' office and overheard Hicks ordering Plaintiff to get down on the floor. When Nadeau entered the office, he saw Plaintiff rolling on the floor and kicking at the officers. Nadeau assisted in applying handcuffs and in securing Plaintiff's feet with leg irons. Nadeau did not observe any officers attempt to grab or assault Plaintiff's testicles. (Id. at 26-27).

6. Statement of Officer Hester

Officer Hester also responded to the altercation and observed Plaintiff resisting several officers. He did not observe any officer reach for Plaintiff's testicles or strike him after he was restrained. Nor did he observe anyone try and strike Plaintiff in the head. Nadeau assisted in restraining Plaintiff and escorted him to segregation. (Id. at 28-29).[4]

7. Statement of Nurses Church and Evans

Plaintiff was examined and treated in ACI by Church after he was removed from Hicks' office. She noted that Plaintiff had a small laceration on his lower lip; left knee cap; right bicep and right wrist and these wounds were treated. Plaintiff complained of head pain and Church noticed his head appeared to be swollen so she referred Plaintiff to CVMC for further evaluation. (Id. at 49). Plaintiff received an x-ray at CVMC, and Nurse Evans reviewed it and noted that it revealed a nasal fracture. (Id. at 51).

II. STANDARD OF REVIEW

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587. (1986). The "mere existence of *some* alleged factual dispute between the parties

---

[4] Officer Hutchens observed two officers quickly moving towards Hicks' office and he responded and noted that Plaintiff was being placed in leg restraints. Hutchens did not observe anyone strike Plaintiff or reach for his testicles. (Id. at 30-31).

will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (italics in original). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

III. DISCUSSION

Defendants contend that the force that was employed during the January 1st incident was not excessive.

A. Legal Standard

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, (1988) (internal citations omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments", U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain[.]" Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillan, 503 U.S. 1, 7 (1992)).

B. Evidence

The record before the Court demonstrates that the use of force was not excessive. Plaintiff contends in his complaint and in his affidavit that Hicks initiated contact by striking him with a stack of papers on his head. Plaintiff states that Hicks grabbed his arm after Plaintiff advanced it towards him and Hicks tried to get him on the ground. Plaintiff also admits that Officers Pennell and Pritchard "immediately arrived" as this was occurring and that Pennell struck him with his baton. See (5:11-cv-00122, Doc. No. 41: Plaintiff's Aff. in Opposition to Summary Judgment ¶¶ 13-17). (Id. ¶¶ 15-17). Although Plaintiff contends that Pennell repeatedly struck him that is simply not supported by the record which shows that after the initial contact between Hicks and Plaintiff, Pennell and Pritchard instantly appeared in the office and joined in the effort to subdue him and that no less than five of the officers that responded state that they observed no more than one blow from Pennell or Hicks. Moreover, multiple officers denied that they observed anyone strike Plaintiff after he was subdued, and in particular, no one saw any officer strike him in the face or intentionally grab his testicles. Plaintiff's affidavit, and other evidence of record, no doubt confirms the existence of a violent struggle but the evidence suggests the need for the use of force was in direct response to Plaintiff's refusal to submit to lawful orders. In other words, once he was ordered to submit, by multiple officers, he had no choice but to do so and his repeated efforts to resist only prolonged the altercation and increased the risk of injury.

While it is clear that Plaintiff suffered injuries during the struggle, the injuries are ones that would appear to naturally occur based on the amount and degree of force that was needed to bring him under control in the office.[5] Especially, when it took at least five officers to bring one

---

[5] Defendants submitted a video that shows Plaintiff being taken from the office to segregation after he was finally subdued. The video shows no apparent injuries and it appears that Plaintiff had little difficulty in walking to

man under control. And Plaintiff was not the only one to suffer injuries as Hicks, Pennell and Pritchard suffered serious injuries and were treated immediately after the altercation and Pennell and Pritchard were later evaluated at CVMC for their injuries.[6]

Finally, Plaintiff's contention that he was, in his apparent estimation, assaulted when one or more of the officers allegedly grabbed his testicles, or that he was repeatedly struck with a baton or in the face, is simply baseless. The injuries ssuffered appear inadvertent in light of the fact that several officers were struggling with him on the ground in an effort to subdue him. Further, while there is evidence that Plaintiff was treated at ACI and at CVMC for his injuries, that evidence does not suggest any treatment for injury to his groin area or that Plaintiff made any complaints regarding such an injury. The only evidence of injury pertains to the reasonable use of force that involved one or two baton strikes and the efforts of multiple officers to restrain him.[7]

The focus in ruling on a motion for summary judgment turns on whether there is a <u>genuine</u> issue of material fact. Here, as is plain from the record, the parties present stories that are widely opposed, and "[w]hen parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380-81 (2007). The Court finds that no reasonable jury, or juror for that matter, could credit Plaintiff's version of the events and the motion for summary judgment should therefore be granted.

---

segregation. (<u>Id.</u>, Doc. No. 34-4: Exhibit D).

[6] Plaintiff of course has not refuted the evidence that the defendants were themselves seriously injured as result of his refusal to submit to orders to stop resisting.

[7] Plaintiff filed a one-page motion for discovery in which he contends that some of his legal materials have been misplaced. (<u>Id.</u>, Doc. No. 27). However, he does not point to anything in particular that he is seeking other than unidentified portions of his file therefore the motion will be denied. In addition, Plaintiff filed this motion some three months before the defendants filed their motion for summary judgment and supporting evidence therefore it appears that Plaintiff, who was of course served with all of this material, had sufficient information to respond to the defendants dispositive motion. Plaintiff also submitted a letter to the Clerk's office requesting "8 blank witness subpoena forms" but he fails to state who he wishes to subpoena or what relevance their testimony may have. (<u>Id.</u>, Doc. No. 43).

IV. CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has failed to present any evidence – save for unsupported, fanciful claims – that the force that was employed to subdue him was excessive or that it was applied in a malicious manner and the motion for summary judgment will therefore be granted.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's motion for discovery is **DENIED**. (Doc. No. 27)

2. Plaintiff's motion to strike qualified immunity defense is **DENIED**. (Doc. No. 28).

3. Plaintiff's motion for reconsideration of the order denying counsel is **DENIED**. (Doc. No. 29).

4. Plaintiff's motion to appoint counsel is **DENIED** as he has failed to make an adequate showing. (Doc. No. 30).

5. Defendants' motion for summary judgment is **GRANTED**, (Doc. No. 33), and the complaint is **DISMISSED with prejudice.**

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: September 30, 2015

Robert J. Conrad, Jr.
United States District Judge